1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7           EASTERN DISTRICT OF WASHINGTON
8
9  JOSE VARGAS,                           No. 1:15-CV-03078-JTR

10            Plaintiff,                  ORDER GRANTING PLAINTIFF'S
11                                        MOTION FOR SUMMARY
12             v.                         JUDGMENT

13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,

15            Defendant.
16

17        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No.

18  17, 22.  Attorney D. James Tree represents Jose Armando Vargas (Plaintiff); Special

19  Assistant United States Attorney Ellinor R. Coder represents the Commissioner of

20  Social Security (Defendant).  The parties have consented to proceed before a

21  magistrate judge.  ECF No. 4.  After reviewing the administrative record and the

22  briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for

23  Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

24  **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42

25  U.S.C. § 405(g).

26                          **JURISDICTION**

27        Plaintiff filed an application for Supplemental Security Income (SSI) on

28  October 2, 2007, alleging disability since July 1, 2007, due to "Uns malignant

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

neoplasm rectum, asthma, [and] hypertension." Tr. 320-322, 348, 352.   Plaintiff's application was denied on December 20, 2007. Tr. 128-131.  As instructed by the December 20, 2007, Notice of Disapproved Claim, Plaintiff filed a request for a hearing. Tr. 129, 132-134.  Administrative Law Judge (ALJ) Kim D. Parrish held a hearing on April 16, 2010, at which Plaintiff, represented by counsel, vocational expert, Scott Whitmer, and witness, Hector Vargas, testified and Milly Lopez interpreted for Plaintiff.  Tr. 49-67.  The ALJ issued an unfavorable decision on May 28, 2010.  Tr. 100-121.  The Appeals Council remanded the case back to the ALJ for further proceedings on February 21, 2012.  Tr. 122-127.  ALJ Virginia Robinson[1] held a second hearing on July 30, 2013, at which Plaintiff and vocational expert, Kimberly Mullinax, testified and Leanna Vilafan interpreted for Plaintiff.  Tr. 68-97. The ALJ issued a decision on August 12, 2013, finding that Plaintiff was not eligible for benefits. Tr. 22-48.  The Appeals Council denied review on March 19, 2015.  Tr. 1-9. The ALJ's August 12, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 20, 2015.  ECF No. 1, 7.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 44 years old at application.  Tr. 320.  He received his high school diploma in 1985 in Puerto Rico.  Tr. 52, 58, 871.  Plaintiff's work history includes construction worker and a machine operator.  Tr. 353, 943-945.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

---

[1]From this point forward, any reference to the ALJ is a reference to ALJ Virginia Robinson.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.

*Batson v. Comm'r of Soc.  Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 12, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity (SGA) between 2008 and 2010.  Tr. 30-31.  Considering there had also been a twelve-month period since the alleged onset date in which Plaintiff had not engaged in SGA, the ALJ proceeded in the sequential evaluation process.  Tr. 31.

At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disk disease of the lumbar spine, unspecified left shoulder impairment, unspecified right hip impairment, and asthma.  Tr. 31.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 34.

At step four, the ALJ assessed Plaintiff's residual function capacity:

> I find that the claimant has the residual functional capacity to lift and carry fifty pounds occasionally and twenty- five pounds frequently.  He can stand and/or walk six hours in an eight-hour workday, and can sit for six hours in the same period.  He can occasionally climb ramps, stairs, ladders, or scaffolding.  He can occasionally reach overhead with his left upper extremity.  He may require the use of a hand-held assistive device to navigate uneven terrain. He should avoid concentrated exposure to pulmonary irritants such as fumes and gases.

Tr. 35.  The ALJ found Plaintiff's past relevant work to include construction worker II and machine operator, and the ALJ concluded that Plaintiff was able to perform his past relevant work as a machine operator.  Tr. 40-41.

In the alternative to an unfavorable step four determination, the ALJ found at

step five that considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and cleaner/housekeeper. Tr. 41-42. Additionally, the ALJ noted that the application of the Medical-Vocational Rules (grids) would lead to a finding of "not disabled." Tr. 42. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 2, 2007, through the date of the ALJ's decision, August 12, 2013. Tr. 42.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) finding Plaintiff was able to communicate in English; (2) finding Plaintiff was capable of past relevant work; (3) finding Plaintiff could perform other work in the national economy; (4) finding that Plaintiff had performed SGA from 2008 to 2010; and (5) failing to properly consider and weigh medical source opinions.

## DISCUSSION

**A.    Communicate in English**

Plaintiff challenges the ALJ's determination that Plaintiff was capable of communicating in English. ECF No. 17 at 20-25. A claimant's ability to communicate in English is considered a part of a claimant's education, which is a vocational factor at step four and five:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 416.964(b)(5). The inability to communicate in English is defined as "unable to communicate in English, or able to speak and understand English but are unable to read or write in English." App. 2, Subpt. P, Pt. 404 § 201.00(h)(1)(iv). The inability to read or write in English is also part of Commissioner's educational consideration. 20 C.F.R. § 416.964(b). Illiteracy is defined as "the inability to read or write. [The Commissioner] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1).

The ALJ determined that Plaintiff was capable of communicating in English. Tr. 41. The ALJ premised this determination on (1) Plaintiff testified that he was able to speak English to some degree and that he had spoken English in his past employment, (2) in January 2012, while filling out a report concerning his disability, employee Jeanne MacDonald endorsed that he could speak English, and (3) during his consultative psychological examination in May 2012, he did not need an interpreter. Tr. 38. Plaintiff argues that the ALJ's findings are not supported by the record. ECF No. 17 at 21.

At the hearing, Plaintiff testified that Jeannie McDonald helped him complete some of his forms for DSHS. Tr. 77. He acknowledged that he completed the top part of the form at Exhibit 34F, Page 80 when the ALJ presented him with the form at the hearing. Tr. 78-79. The top section of the form contained Plaintiff's name, address, and phone number. Tr. 896. On the same form, when asked "Does the claimant speak English?" it appears that Ms. McDonald checked "Yes." Tr. 872. Plaintiff further testified that when he goes to the clinic, the staff sometimes puts an interpreter in the room, and when he went to other doctors he always had an interpreter. Tr. 79. The ALJ then inquired about Plaintiff speaking English on the

job, Plaintiff stated "[a] little when I'm asked questions." *Id.* The ALJ's remaining questions and Plaintiff's testimony regarding Plaintiff's ability to communicate in English were as follows:

> Q    Okay. All right. Now, are you able to converse in English for basic, basic kind of conversations like at the grocery store, things like that?
>
> A    I usually go with my brother.
>
> Q    But are you able to understand and speak some English?
>
> A    Yes, when I'm talked to but I can't have a complete conversation.
>
> Q    Okay. Now, do you have someone who helps you with like Social Security paperwork and reading it and writing things?
>
> A    Yes, my brother.
>
> Q    Okay. Which brother is this?
>
> A    Hector Vargas.
>
> Q    Hector.
>
> A    The one who showed up earlier.
>
> Q    Okay. All right. Is there some things you have memorized like your name and address, phone number?
>
> A    Yes.
>
> Q    Okay. Now, would Hector give you guidance as far as filling out any of those forms?
>
> A    Yes, always.

Tr. 88-89. In the May 19, 2012, consultative examine, Dr. Gomes noted that no

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

interpreter was needed.  Tr. 875.  Dr. Gomes further stated that Plaintiff had "[n]o speech difficulties.  He did speak with an accent and at the end of the evaluation, he initiated saying thank you."  Tr. 877.

The evidence referenced by the ALJ supported the first part of the definition of the ability to communicate in English, the ability to speak and understand English, but it did not support the second part of the definition of the ability to communicate in English, the ability to read and write in English.  The ALJ failed to consider Plaintiff's ability to read and write in English sufficiently to be considered literate, i.e., understand and draft instructions or inventory lists as discussed in 20 C.F.R. § 416.964(b)(1).  Therefore, the ALJ's determination that Plaintiff was unable to communicate in English was in error.

This error requires that the case be remanded.  This error is prevalent at step four, in which the ALJ found that Plaintiff was capable of performing his past relevant work as a machine operator (DOT 616.380-018) as generally performed.  Tr. 40-41.  According to the *Dictionary of Occupational Titles* (DOT), this job has a language development level of three, which is defined as follows:

> Reading: Read a variety of novels, magazines, atlases, and encyclopedias.  Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.
>
> Writing: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.
>
> Speaking: Speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice.

Appendix C, *Dictionary of Occupational Titles*.  Considering the hypothetical presented to the vocational expert did not address education and the consideration of the ability to communicate in English or literacy, Tr. 91-21, the step four determination is in error.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

Likewise, the ALJ's error is carried into the step five determination. The ALJ found that based on grid rules 202.11, 202.17, 203.19, and 203.26, Plaintiff was "not disabled." Tr. 42. However all of these rules cover individuals who have the ability to communicate in English. 20 C.F.R. Part 404, Subpt. P, App. 2. §§ 202.00, 203.00. Therefore, this finding by the ALJ is also not supported by the record and is in error.

Additionally, as part of her step five determination, the ALJ considered jobs with a light residual functional capacity, and based on the vocational expert testimony, found Plaintiff capable of production assembler, hand packager, and cleaner/housekeeper. Tr. 42. Under the DOT, the job of hand packager has a language development level of two and the jobs of production assembler and cleaner/housekeeper have a language development level of one. *Dictionary of Occupational Titles*. A language development level of one is defined as follows:

> Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> Speaking: Speak simple sentences, using normal word order, and present and past tenses.

Appendix C, *Dictionary of Occupational Titles*. Considering the hypothetical given to the vocational expert did not address any educational consideration, such as the ability to communicate in English or literacy, Tr. 92, the ALJ erred in her step five determination. Therefore, the case must be remanded for the ALJ to readdress Plaintiff's ability to communicate in English and to present new hypotheticals to a vocational expert, which includes a reference to education as a vocational factor.

**B.    Substantial Gainful Activity**

Plaintiff argues that he did not perform SGA from 2008 to 2010. ECF No. 17 at

5-8.

In determining whether a particular job constitutes SGA, the Social Security regulations consider two employment categories: employee and self-employed. *See* 20 C.F.R. §§ 416.974, 416.975. For an employee, the primary factor in determining whether an employee's past work was performed at SGA "will be the earnings [the employee] derive[d] from the work activity." 20 C.F.R § 416.974(a)(1). There is a rebuttable presumption that the employee either was or was not engaged in SGA if his average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines. *See* 20 C.F.R. § 416.974(b)(2)-(3); see also *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."). The presumption of SGA for an employee was present with average monthly earnings above $940 in 2008, $980 in 2009, and $1,000 in 2010. *See* Monthly Substantial Gainful Activity Amounts Chart, *available at* http:// www.ssa.gov/oact/cola/sga.html.

In her decision, the ALJ found that Plaintiff had no documented earnings since 2000. Tr. 30. Therefore, the ALJ relied on a Work History Report in which Plaintiff stated he had worked as a mechanic at Irwain Research between 2008 and 2010, earning $9.00 per hour and working between 40 and 48 hours per week. *Id.* Based on this Work History Report, the ALJ found that Plaintiff had been engaged in substantial gainful activating from 2008 to 2010. Tr. 30-31.

Plaintiff's earnings records showed that he last worked at Win-Some Contracting, Inc. in 2000. Tr. 328, 339, 344. At application, Plaintiff stated that he stopped working in 2000 because he was laid off. Tr. 352-353. On a Work History Report, which is not dated and not signed, Plaintiff lists his work for Win-Some Contracting, Inc. as lasting from 1979 to 2006 and that he worked for Irwain Research from 2008 to 2010. Tr. 943. Plaintiff further stated that the work at Irwain Research paid $9.00 an hour and that he worked eight hours a day and five to six days per week. Tr. 945. On February 20, 2009, Plaintiff underwent a physical evaluation for an

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

application for benefits from the Washington Department of Social and Health Services (DSHS).  Tr. 522-525.  On March 5, 2009, Plaintiff underwent a psychological evaluation for an application for benefits from DSHS.  Tr. 546-550.  On August 26, 2009, Plaintiff informed Dr. Bellum that he had been unemployed for the past five years.  Tr. 588.  The record shows that Plaintiff qualified for medical and food benefits from DSHS for the month of August 2009.  Tr. 594, 665, 794.  On August 4, 2010, Plaintiff was informed by DSHS that he had to participate in Mental Health Treatment if he wished to remain eligible for assistance.  Tr. 799.  On September 1, 2010, Plaintiff received a letter from DSHS informing him he had to participate in medical treatment if he wished to remain eligible for assistance.  Tr. 801.  He received a similar letter on November 2, 2010.  Tr. 805.  On December 18, 2010, Plaintiff had another physical evaluation performed for DSHS.  Tr. 657-660.  On May 19, 2012, Plaintiff reported to Dr. Gomes that he had last worked twenty years ago.  Tr. 878.

At the April 16, 2010, hearing, Plaintiff testified that he had been unable to work for four years and that his current source of income was DSHS benefits.  Tr. 56, 58.  At the July 30, 2013, hearing, Plaintiff testified that he worked for Irwain Research in Yakima and they had paid him under the table.  Tr. 75-76.  He stated that he would sometimes have to lift and carry fifty pounds, but most of the time "that company gave me a lighter job.  Most of the time they had me cutting metal."  Tr. 76.  He further testified that "[t]hey only gave me a few months of employment.  It wasn't a full-time year-round job."  Tr. 79.

Here the evidence supports both the ALJ's findings and Plaintiff's assertions.  Considering the case is being remanded and there is evidence that Plaintiff may not have the language development level required to perform the job of machine operator as generally performed in the national economy, the ALJ is instructed to further develop the record to determine Plaintiff's earnings at this job and to determine if Plaintiff was accommodated at this job.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

1    **C.    Evaluation of Medical Evidence**

2        Plaintiff argues the ALJ failed to properly consider and weigh the medical

3    opinions expressed by Venugopal Bellum, M.D., William Drenguis, M.D., Manuel

4    Gomes, Ph.D., and Brent Packer, M.D.  ECF No. 17 at 8-20.

5        In weighing medical source opinions, the ALJ should distinguish between three

6    different types of physicians: (1) treating physicians, who actually treat the claimant;

7    (2) examining physicians, who examine but do not treat the claimant; and,

8    (3) nonexamining physicians who neither treat nor examine the claimant.  *Lester v.*

9    *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the

10   opinion of a treating physician than to the opinion of an examining physician.  *Orn v.*

11   *Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the

12   opinion of an examining physician than to the opinion of a nonexamining physician.

13   *Id.*

14       When a treating physician's opinion is not contradicted by another physician,

15   the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v.*

16   *Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is

17   contradicted by another physician, the ALJ is only required to provide "specific and

18   legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*,

19   722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion

20   is not contradicted by another physician, the ALJ may reject the opinion only for

21   "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining

22   physician's opinion is contradicted by another physician, the ALJ is only required to

23   provide "specific and legitimate reasons" for rejecting the opinion of the examining

24   physician.  Id. at 830-831.

25       The specific and legitimate standard can be met by the ALJ setting out a

26   detailed and thorough summary of the facts and conflicting clinical evidence, stating

27   her interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747,

28   751 (9th Cir. 1989).  The ALJ is required to do more than offer her conclusions, she

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

1  "must set forth [her] interpretations and explain why they, rather than the doctors', are

2  correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

3         **1.**        **Venugopal Bellum, M.D.**

4          Dr. Bellum treated Plaintiff from October 2008 to August 2012.  Tr. 537, 603-

5  646, 720-767, 814-815, 842-843, 903-926.  On February 20, 2009, Dr. Bellum

6  completed a Psychical Evaluation form for DSHS, in which he opined that Plaintiff

7  was limited to sedentary work for at least twelve months.  Tr. 524-525.  On October

8  29, 2009, Dr. Bellum opined that Plaintiff would need to lie down during the day and

9  if Plaintiff was employed at a forty hour a week job, he would likely miss four or

10  more days of work per month.  Tr. 532-533.  On February 18, 2010, Dr. Bellum

11  completed a Psychical Evaluation form for DSHS, in which he opined that Plaintiff

12  was limited to sedentary work for 90 days to twelve months.  Tr. 659-660.  On

13  February 11, 2011, Dr. Bellum completed a Functional Assessment form for DSHS, in

14  which he opined that Plaintiff could stand for one hour in an eight-hour workday, sit

15  for one to two hours in an eight-hour workday, lift fifteen pounds occasionally, and

16  lift five pounds frequently.  Tr. 808.  Dr. Bellum further stated that Plaintiff could not

17  kneel or stoop.  Tr. 809.  Dr. Bellum expected Plaintiff's condition to impair work

18  function for six months.  Tr. 808.  On January 26, 2012, Dr. Bellum completed a

19  functional assessment form for DSHS.  Tr. 837-841.  Dr. Bellum opined that Plaintiff

20  could sit for most of the day, walking or standing for brief periods.  Tr. 837.  He

21  limited plaintiff to lifting a maximum of ten pounds and only lifting two pounds

22  frequently.  *Id*.  He expected Plaintiff's condition to impair work function for twelve

23  months.  *Id*.  On March 14, 2012, Dr. Bellum opined that Plaintiff needed to lie down

24  for four to six hours during the day due to hip and back pain.  Tr. 670.  He also stated

25  that if Plaintiff were employed at a forty hour a week job, he would likely miss four or

26  more days of work per month due to his medical impairments.  Tr. 671.  Dr. Bellum

27  stated that these limitations had existed since 2008.  *Id*.

28          The ALJ gave Dr. Bellum's opinions "minimal weight" because (1) the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

opinions made minimal or no reference to objective evidence to support the asserted limitations, (2) the opinions were inconsistent with the longitudinal findings, (3) the opinions were inconsistent with Plaintiff's ability to earn SGA from 2008 to 2010, and (4) the opinions were inconsistent with each other.  Tr. 40.  Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons to reject Dr. Bellum's opinions.  ECF No. 17 at 16.

The ALJ's first reason, that the Dr. Bellum's opinions made minimal or no reference to objective evidence to support the asserted limitations, is not a legally sufficient reason to reject the treating physician's opinion.  Opinions that are expressed in check-the-box forms, which are supported by a provider's significant experience with the patient and numerous records are entitled to weight that otherwise would not be entitled to unsupported check-the-box forms.  *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

Here, the record shows that Dr. Bellum had treated Plaintiff for at least four years, during that time he penned six opinions.  Additionally, the treatment records surrounding each opinion provided some support for the opinions.  Surrounding the February 20, 2009, opinion, Dr. Bellum's records show Plaintiff had elevated TSH levels, untreated hepatitis C, and tenderness with palpation in the lumbar spine.  Tr. 608, 611.  Surrounding the October 2009 opinion, Dr. Bellum's records show Plaintiff was receiving injections in his back, which were not helping to ease the pain.  Tr. 642.  Additionally, a CT of the pelvis revealed a questionable avascular necrosis of the right hip and the evaluation showed mild tenderness to palpation in the lumbosacral area and hips.  *Id*.  At the time of the evaluation, Plaintiff was ambulating with a walker due to pain and appeared to have paraspinal muscle spasm and stiffness in his back.  *Id*.  Dr. Bellum's records surrounding the February 2010 evaluation showed Plaintiff had mild tenderness to palpation in the lumbosacral area.  Tr. 762, 764, 766.  Dr. Bellum's records surrounding the February 2011 opinion discussed a recent MRI showing a stable osteolytic in the right hip.  Tr. 749.  Additionally there was

tenderness to palpation in the lumbosacral area, muscle spasm and stiffness in the lumbosacral area, and the range of motion of the right hip was slightly restricted due to pain. *Id.* Around the January 2012 opinion, Dr. Bellum's records showed that Plaintiff's TSH levels were elevated and there was tenderness to palpation in the lumbosacral area with a restricted range of motion due to pain. Tr. 735, 737. Finally, the records surrounding the March 2012 opinion showed continued treatment for Plaintiff's chronic hip pain, hepatitis C and rectal cancer. Tr. 732. Therefore, the ALJ's first reason was not legally sufficient.

Considering this case is already being remanded and the ALJ erred in this initial treatment of Dr. Bellum's opinions, the ALJ is instructed to reconsider Dr. Bellum's opinions on remand.

### 2.    William Drenguis, M.D.

On April 28, 2013, Dr. Drenguis completed a consultative examination of Plaintiff. Tr. 699-710. He reviewed over fifty pages of records covering 2008 and 2009. Tr. 705. Dr. Drenguis diagnosed Plaintiff with degenerative joint disease of the lumbar spine, degenerative joint disease of both hips, chronic pain syndrome, asthma, mild left shoulder impingement syndrome, ataxia, and history of surgical resection of the rectal CA. Tr. 709. Dr. Drenguis opined that Plaintiff would be limited to frequently reaching in all directions, including overhead, with the left arm; he would be limited to occasional use of foot controls bilaterally; he would not be able to climb stairs/ramps, climb ladders/scaffolds, balance, stoop, kneel, crouch, and crawl; he should never be exposed to unprotected heights, moving mechanical parts, or dust, orders, fumes and pulmonary irritants; he would be limited to occasionally operating a motor vehicle; and that these limitations would last for twelve consecutive months. Tr. 701-704.

The ALJ gave "minimal weight to Dr. Drenguis' opinion because (1) it was inconsistent with longitudinal findings, and (2) it was inconsistent with Plaintiff's ability to earn SGA from 2008 to 2010. Tr. 40. Considering the case has been

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

remanded with instructions for the ALJ to further develop the record regarding Plaintiff's earnings from 2008 to 2010, the ALJ is further instructed to reconsider the weight given to Dr. Drenguis' opinion.

### 3. Manuel Gomes, Ph.D.

On May 19, 2012, Dr. Gomes completed an evaluation of Plaintiff, which included reviewing medical records from January 20, 2012, through January 24, 2012, and additional records supplied by Plaintiff, including a 2006 orthopedic evaluation. Tr. 875-878. Dr. Gomes diagnosed Plaintiff with a mood disorder, not otherwise specified. Tr. 878. He opined that Plaintiff was not capable of managing his own funds; he had the capability to perform simple tasks, but had a mild impairment in dealing with detailed and complex tasks; he had no personality traits that would impact his ability to work with others or accept instructions from supervisors; he was not able to manage stressors in the workplace. Tr. 878.

The ALJ gave "some weight" to Dr. Gomes' opinion as to Plaintiff's lack of limitations in social functioning, but gave "no weight" to the rest of the opinion because Plaintiff's lack of treatment or complaints in treatment settings. Tr. 34. Considering the case is being remanded for further proceedings, the ALJ is instructed to reconsider Dr. Gomes' opinion on remand.

### 4. Brent Packer, M.D.

On April 12, 2012, Dr. Packer completed a Review of Medical Evidence form for DSHS. Tr. 853. He reviewed records from Dr. Bellum dated February 20, 2009, and March 14, 2014, Dr. Chenal, and Dr. Thompson. *Id*. Dr. Packer recommended a less than sedentary overall activity restriction and stated that Plaintiff could not sustain a forty hour work week at that time. *Id*.

The ALJ gave "minimal weight" to Dr. Packer's opinion because (1) it was based primarily on the opinions of Dr. Bellum, and (2) it was inconsistent with Plaintiff's activities. Tr. 40. Considering the ALJ has been instructed to reconsider the opinion of Dr. Bellum, she is further instructed to reconsider the opinion of Dr.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

1    Packer.

2                              **REMEDY**

3         The decision whether to remand for further proceedings or reverse and award

4    benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d

5    599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no

6    useful purpose would be served by further administrative proceedings, or where the

7    record has been thoroughly developed," *Varney v. Secretary of Health & Human*

8    *Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand

9    would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir.

10   1990). *See also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its

11   discretion not to remand for benefits when all of these conditions are met).  This

12   policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.

13   But where there are outstanding issues that must be resolved before a determination

14   can be made, and it is not clear from the record that the ALJ would be required to find

15   a claimant disabled if all the evidence were properly evaluated, remand is appropriate.

16   *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211

17   F.3d 1172, 1179-80 (9th Cir. 2000).

18        In this case, it is not clear from the record that the ALJ would be required to

19   find Plaintiff disabled if all the evidence were properly evaluated.  Further

20   proceedings are necessary for the ALJ to determine Plaintiff's capability to

21   communicate in English, to readdress the medical source opinions in the record,

22   develop the record as to Plaintiff's earnings from 2008 to 2010, and make a new step

23   four and step five determination considering Plaintiff's ability to communicate in

24   English and literacy.  The ALJ is further instructed to send Plaintiff to a psychological

25   evaluation to test for literacy and to take testimony from a vocational expert.  At a

26   new hearing, when presenting hypotheticals to the vocational expert, the ALJ is

27   instructed to present Plaintiff's education level including the ALJ's findings of the

28   ability to communicate in English and literacy as a part of each hypothetical.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

Finally, in Plaintiff's Reply, ECF No. 23 at 6, line 15, there is language that, intentionally or carelessly, could appear to question the motivation of the Administrative Law Judge who heard this matter.  The Court finds no basis for such language, and no place for it in these proceedings.

### CONCLUSION

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 11, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18